JUL. 1. 2008  4:28PM   & A LEGAL SERVICE 6506974649

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

FILE VIA FAX

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
3PO GAS INC., doing business as CROW CANYON WINE & LIQUOR, on behalf of itself and all others similarly situated

### DEFENDANTS
REDDY ICE HOLDINGS, INC., et al.

(b) County of Residence of First Listed Plaintiff: **Contra Costa**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

08-3177 EDL

(c) Attorney's (Firm Name, Address, and Telephone Number)
Daniel J. Mogin (95624), THE MOGIN LAW FIRM, P.C., 110 Juniper St. San Diego CA 92101, Tel: 619.687.6611

Attorneys (If Known)

10

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 15 U.S.C. §1
Brief description of cause:
Action brought on behalf of a Class for violations of Section 1 of the Sherman Act

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  See Attachment A          DOCKET NUMBER  See Attachment A

DATE: 1 July 2008
SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

Daniel J. Mogin (95624, dmogin@moginlaw.com)
Chad M. McManamy (225205, chad@moginlaw.com)
Noah D. Sacks (246694, noah@moginlaw.com)
**THE MOGIN LAW FIRM, P.C.**
110 Juniper Street
San Diego, CA 92101
Telephone: (619) 687-6611
Facsimile: (619) 687-6610

Alexander M. Schack (99126, alexschack@amslawoffice.com)
Lee T. Patajo (230667, leepatajo@amslawoffice.com)
**LAW OFFICES OF ALEXANDER M. SCHACK**
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608

Attorneys for Plaintiffs

**CV 08 3177 EDL**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 3PO GAS INC., doing business as CROW CANYON WINE & LIQUOR, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REDDY ICE HOLDINGS, INC., ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC., and ARCTIC GLACIER CALIFORNIA INC.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, 3PO GAS INC., doing business as CROW CANYON WINE & LIQUOR, on behalf of itself and all others similarly situated, brings this action under the federal antitrust laws, Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief, and the costs of suit, including reasonable attorney and expert fees, for the injuries to Plaintiff and members of the proposed Class they represent resulting from Defendants'

{00009670.5}   - 1 -

CLASS ACTION COMPLAINT

1 violations of the federal antitrust laws, specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The allegations set forth below are based upon information and belief pursuant to the investigation of counsel.

## NATURE OF CLAIM

1. This antitrust class action arises out of a conspiracy among Defendants and their co-conspirators with the purpose and effect of fixing prices, allocating markets and territories and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United States and Canada.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 15 and 26, and pursuant to 28 U.S.C. §§ 1331, 1337(a). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) because some Defendants reside, or are licensed to do business or are doing business, or are found or transact business, in this district and/or the claims arose in this district.

## PARTIES

4. The 3PO GAS INC., doing business as CROW CANYON WINE & LIQUOR is a California corporation located in San Ramon, California. Plaintiff purchased Packaged Ice directly from one or more Defendants during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

5. Defendant Reddy Ice Holdings, Inc. ("Reddy Ice") is a Delaware corporation with it principal place of business located in Dallas, Texas. In recent press releases, Reddy Ice describes itself as follows:

> Reddy Ice Holdings, Inc. is the largest manufacturer and distributor of packaged ice in the United States. With over 2,000 year-round employees, the Company sells its products primarily under the widely known Reddy Ice® brand to approximately 82,000 locations in 31 states and the District of Columbia. The Company provides a broad array of product offerings in the marketplace through traditional direct store delivery, warehouse programs, and its proprietary technology, The Ice Factory®. Reddy Ice serves most significant consumer

{00009670.5}

- 2 -

CLASS ACTION COMPLAINT

1  packaged goods channels of distribution, as well as restaurants, special entertainment events, commercial users and the agricultural sector.

2  6. Reddy Ice is the largest ice company in North America, recording 2007 sales of $339 million. It has the dominant market position in the U.S. Sunbelt states, from Florida to Arizona.

7. Reddy Ice manufactures and distributes ice products, including cubed ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice. Reddy Ice sells approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags, sold principally to convenience stores and supermarkets.

8. Defendant Arctic Glacier Income Fund is the Canadian holding company for its operating subsidiary Arctic Glacier Inc. (together, "Arctic Glacier"). Arctic Glacier is a business entity organized under the laws of Alberta, Canada with its principal place of business located in Winnipeg, Manitoba. In its recent press releases, Arctic Glacier describes itself as follows:

> Arctic Glacier Income Fund, through its operating company, Arctic Glacier Inc., is a leading producer, marketer and distributor of high-quality packaged ice in North America under the brand name of Arctic Glacier® Premium Ice. Arctic Glacier operates 37 manufacturing plants and 50 distribution facilities across Canada and the northeast, central and western United States servicing more than 70,000 retail accounts.

9. Arctic Glacier is the second-largest producer, marketer, and distributor of packaged ice in North America, with total revenues of $249 million for 2007. Of these revenues, more than 80 percent comes from its U.S. operations, in which it has dominant market positions in major eastern seaboard cities such as New York and Philadelphia, New England, California, and the Midwest. The company also controls most of the Packaged Ice sales in Canada.

10. Defendant Arctic Glacier International Inc. ("Arctic Glacier International") is a wholly-owned subsidiary of Artic Glacier and serves as its operating and holding subsidiary in the United States. Arctic Glacier International is a Delaware Corporation with its principal place of business located in West St. Paul, Minnesota.

11. Defendant ARCTIC GLACIER CALIFORNIA INC. ("ARCTIC GLACIER CALIFORNIA") is a wholly-owned subsidiary of defendant Artic Glacier and serves as an operating and holding subsidiary in the United States. Prior to its acquisition by Artic Glacier in or around May 2006, CALIFORNIA ICE was comprised of six companies that as a group represented

{00009670.5}

- 3 -

CLASS ACTION COMPLAINT

1 the leading independent manufacturer and distributor of packaged ice in California and one of the
2 four largest packaged ice companies in the U.S. California Ice was the market leader in all of the
3 most densely populated areas of California, including Los Angeles, San Diego, San Francisco,
4 Oakland, San Jose and Sacramento. It was also the only independent producer of packaged ice with
5 a state-wide presence and infrastructure.

## CO-CONSPIRATORS

7  12. Upon information and belief, other individuals, partnerships, firms, corporations and
8 associations are co-conspirators with Defendants and have performed acts and made statements in
9 furtherance of the unlawful restraint of trade. Their identities are not known to Plaintiff at this time.

## CLASS ACTION ALLEGATIONS

11  13. Plaintiff brings this action, pursuant to Rule 23(b) (3) of the Federal Rules of Civil
12 Procedure, on its own behalf and on behalf of all others similarly situated. The "Class" is defined
13 as:

> All persons, corporations, and other legal entities in the United States (excluding governmental entities and defendants, their subsidiaries, and any coconspirators), who purchased Packaged Ice from one or more of the Defendants (the "Class") in the United States or Canada at any time from at least January 1, 2001 through the present (the "Class Period").

17  14. The members of the Class are so numerous and geographically dispersed across the
18 country that joinder of all members of the Class would be impracticable. Due to the nature of the
19 claims asserted here, Plaintiff believes that members of the Class are located throughout the United
20 States. The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff
21 believes that the Class is in the thousands and their identities can only be discovered through
22 inspection of Defendants' and their co-conspirators' records, which are or should be readily
23 available.

24  15. Plaintiff's claims are typical of the members of the Class because Plaintiff and all
25 members of the Class were damaged by the same wrongful conduct of Defendants alleged herein.
26 Plaintiff and the Class purchased Packaged Ice at artificially maintained, noncompetitive prices
27 established by the actions of Defendants and their unnamed co-conspirators in connection with the
28 wrongful conduct alleged herein.

{00009670.5}  - 4 -

CLASS ACTION COMPLAINT

16. Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class. In addition, Plaintiff is represented by counsel who is experienced and competent in the prosecution of complex class action antitrust litigation.

17. Questions of law and fact common to the members of the Class predominate over questions which may affect only individual members, if any, in that Defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendants conspired with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice;

    b. Whether Defendants' conduct violated Section 1 of the Sherman Act;

    c. The existence, duration, and illegality of the contract, combination or conspiracy alleged in this Complaint;

    d. The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages;

    e. Whether Defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

    f. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

18. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by certain class members, who could not afford to individually litigate an antitrust claim against large corporate defendants.

19. Plaintiff is not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## INTERSTATE COMMERCE

20. Defendants are leading manufacturers of Packaged Ice in the United States. During the Class Period, substantial quantities of packaged ice manufactured and sold by them were shipped across state lines in a continuous and uninterrupted flow of interstate trade and commerce.

21. The business activities of the defendants and co-conspirators that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce in the Packaged Ice market throughout the United States.

## NATURE OF TRADE AND COMMERCE

22. Defendants are the largest manufacturers of Packaged Ice in the United States and North America. Sales of Packaged Ice are approximately $1.8 billion annually. About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines). Sales by Defendants comprise approximately 70% of third-party manufacturers' sales of Packaged Ice.

23. Most packaged ice is sold in 5 to 50 pound bags and sold from freezer at liquor, drug, convenience and grocery stores. That freezer usually bears the trade marks of the ice manufacturer. Generally, a store owner is a direct purchase from the packaged ice manufacturer. The packaged ice manufacturer delivers packaged ice in trucks and fills the branded freezer.

24. The demand for packaged ice, under competitive conditions, is inelastic. That is, an increase in price would produce a less than offsetting reduction in quantity sold. Thus, an artificial increase in price would be profitable.

25. Packaged Ice is a commodity. Consumers have little, if any, preference as to brands.

26. For the direct purchasing retailer under normal market conditions and in the presence of bona fide competition, the cost of packaged ice is the most important factor in its purchasing decision.

27. The ultimate consumer demand for packaged ice is highly seasonal, rising significantly in the warmer months. Peak demand during the warmer months of May through September accounts for 69 percent of annual revenues.

///

28. The ultimate consumer demand for packaged ice is geographically specific, with packaged ice being more favored in those parts of the country where the warmer season begins earlier and endures longer.

29. Packaged Ice producers installation of on-location freezers owned by them raises the costs to purchasers of switching from one packaged ice supplier to another.

30. Typical retailers carry only one brand of packaged ice and have long terms relationships with the manufacturer from whom they purchased packaged ice products.

31. There are substantial barriers to entry into the production and distribution of packaged ice. The industry has a high start-up and replacement costs.

32. Packaged Ice is costly to transport and costly to store. As a result, packaged ice effectively cannot be delivered more than 100 miles away from the plant where it is produced.

33. Before the past ten or fifteen years, packaged ice was produced and distributed by local and regional firms. The last decade and a half have brought widespread consolidation as Defendants have acquired numerous independent competitors.

34. Defendant Reddy Ice has conducted a series of acquisitions that have substantially lessened or eliminated its competition in the production and distribution of packaged ice in its territories by its acquisition of small local and regional ice producers that operate either within or contiguous to its existing sales areas. Reddy Ice has not acquired ice producers in areas that would bring it into competition with Arctic Glacier. From 1997 through 1999, Reddy Ice (and its predecessor) pursued a "consolidation strategy" acquiring some 80 ice businesses. None of Reddy Ice's acquisitions were in regions that would place it into competition with Arctic Glacier or Home City, another co-conspirator.

35. The Artic Glacier Defendants have dominant market positions in major eastern seaboard cities such as New York and Philadelphia, as well as in New England, California and the Midwest. During the last several years, Arctic Glacier has conducted a series of acquisitions that have substantially lessened or eliminated its competition in the production and distribution. Arctic Glacier has stated that the acquisition of contiguous, competing ice businesses is its business strategy.

{00009670.5}  - 7 -

CLASS ACTION COMPLAINT

1    36. In 2006, Arctic Glacier acquired a group of six entities in California, giving its market dominance in California, where neither Reddy Ice nor Home City operates. Thereafter, Arctic Glacier enhanced its dominance in California by acquiring Union Ice-Pacific L.P. of Los Angeles, California, again acquiring operations contiguous to, or overlapping with, its existing operations.

37. Also, during 2006, Arctic Glacier acquired an upstate New York producer, Happy Ice LLC, giving Arctic Glacier dominance in a region where there is no competition from either Reddy Ice or Home City.

38. Unnamed co-conspirator, Home City sells ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland.

39. Sales by packaged ice by Defendants represent approximately 70% of the packaged ice sold to retailers and similar businesses.

40. The distribution networks of the three major packaged ice producers show all the markings of territorial allocations. The major producers hold large contiguous territories in the United States. The have little, if any, overlap in the locations they serve despite having the ability and resources to compete with each other.

41. Defendants have engaged in a strategy of avoiding each other's territories, while otherwise growing their businesses through acquisition, even when it has been against their unilateral economic self-interest to do so.

42. As previously alleged, the structural characteristics of the packaged ice market make it uniquely susceptible to anticompetitive acts. Packaged ice is a highly perishable and expensive to transport and store. The demand (in a hypothetical competitive market) for packaged ice is highly inelastic. Packaged Ice is a commodity product. For the direct customer (e.g., a retailer), price is the most significant factor in the purchase decision.

43. In simple terms, the market for packaged ice shares numerous characteristics with markets where price fixing is often endemic.

44. The price of packaged ice has risen steadily and consistently over the class period, notwithstanding the gyrations that should be expected due to varying input costs.

{00009670.5} - 8 -

CLASS ACTION COMPLAINT

## ANTICOMPETITIVE CONDUCT

45. Defendants hold a dominant position in the sale of packaged ice in the United States. They have agreed to allocate territories and customers among themselves and to avoid competition with each other and to thereby enable them to impose supra-competitive prices.

46. Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to present day, Defendants and their co-conspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice in a per se violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

47. Defendants anticompetitive conduct has resulted in the following market division: (1) Reddy Ice has the dominant market position in the U.S. sunbelt states, from Florida to Arizona, and the Northwest (AZ, NM, TX, OK, AR, LA, MI, AL, GA, FL, SC, NC, VA, CO, DE, DC, HI, ID, KA, KY, MD, MS, NV, NJ, OR, PA, TN, UT, WA, WV and WY); (2) Arctic has a dominant market position in the Central and Northeastern states and California (CA, ND, SD, CA, NE, KS, MO, IA, MN, WI, MI, PA, DE, NJ, NY, CT, VT, NH and ME); and (3) Home City Ice has a dominant market position in the Midwest (IL, OH and IN). There is virtually no overlap between the geographic markets in which each Defendant operates.

48. By engaging in conduct that allocated the market among Defendants, price competition was reduced or eliminated throughout the United States.

49. According to Gina Talamona, a spokesperson for the Antitrust Division of the United States Department of Justice ("DOJ"), the DOJ is investigating possible anti-competitive practices in the Packaged Ice business.

50. The DOJ investigation follows a complaint made to Canada's Competition Bureau ("Bureau") by Jerry Antoniuk, owner of Polar Ice, an Edmonton, Canada Packaged Ice manufacturer. Antoniuk complained to the Bureau and brought a civil antitrust suit against Arctic Glacier alleging that Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling," bribing, and offering kickbacks to Polar Ice's customers. Justice

Richard Marceau of Court of Queen's Bench of Alberta awarded Polar Ice $50,000 in damages, a decision that Arctic Glacier said it would appeal.

51. On or about March 6, 2008, Arctic Glacier issued the following press release:

> Arctic Glacier Income Fund (TSX:AG.UN) today announced that on March 5, 2008, its operating subsidiary, Arctic Glacier Inc., became aware the Antitrust Division of the United States Department of Justice is conducting an investigation into possible antitrust issues in the Packaged Ice industry. The company will cooperate with authorities in the course of the investigation.

52. Also on or about March 6, 2008, Reddy Ice issued the following press release

> : Reddy Ice Holdings, Inc. (NYSE: FRZ) announced that federal officials executed a search warrant at the Company's corporate office in Dallas on March 5, 2008. The Company is cooperating with the authorities.
>
> The Company's priority mission is to provide superior service to its customers, and it will continue to function in a normal business manner.

To obtain the search warrant, the United States Department of Justice had to have probable cause, demonstrated in a sworn affidavit(s) based on reasonably trustworthy and reliable information which was accepted by a federal magistrate, to believe that it would obtain evidence of an antitrust violation.

53. On or about March 7, 2008, Reddy Ice issued the following additional press release:

> Reddy Ice Holdings, Inc. (NYSE: FRZ) is providing further information to supplement the press release issued on March 6, 2008 regarding the execution of a search warrant at the Company's Dallas corporate office on March 5, 2008. The execution of the search warrant was directed by the Antitrust Division of the United States Department of Justice in connection with an investigation of the packaged ice industry. The Company's board of directors has formed a special committee of independent directors to conduct an internal investigation.
>
> The Company will continue to serve its customers in its normal business manner.

54. Reddy Ice spokeswoman Courtney Birck said that the DOJ took "various documents and information," but she would not say whether computers were taken.

55. Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer and Chief Executive Officer of Reddy Ice resigned, just prior to the time the DOJ executed its search warrants.

{00009670.5}

- 10 -

CLASS ACTION COMPLAINT

56. On or about June 17, 2008, an Information and Plea Agreement entered by co-conspirator Home City on or about October 18, 2007 was unsealed in the Southern District of Ohio. The Information charged and Home City admitted in its pea agreement that that:

> Beginning at least as early as January 1, 2001 and continuing until on or about July 17, 2007, the exact dates being unknown to the United States, [Home City] and co-conspirators entered into and engaged in a conspiracy to suppress and eliminate competition by allocating packaged ice customers and territories in southeastern Michigan and the Detroit, Michigan metropolitan area. The charged conspiracy unreasonably restrained interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).
>
> \* \* \*
>
> For the purposes of forming and carrying out the charged conspiracy, the defendant and co-conspirators did the following things, among others:
>
> a. participated in meetings and conversations to discuss packaged ice customers and territories in southeastern Michigan and the Detroit, Michigan metropolitan area;
>
> b. agreed, during those meetings and conversations, to allocate packaged ice customers and territories in southeastern Michigan and the Detroit, Michigan metropolitan area;
>
> c. exchanged information during those meetings and conversations, for the purpose of monitoring and enforcing adherence to the agreements to allocate customers and territories in southeastern Michigan and the Detroit, Michigan metropolitan area; and
>
> d. refrained from competing for packaged ice customers and territories that were so allocated.
>
> \* \* \*
>
> Various individuals and corporations, not made defendants in th[e] Information, participated as co-conspirators in the offense charged and performed acts and made statements in furtherance of it.

## ALLEGATIONS OF ANTITRUST INJURY TO PLAINTIFF AND THE CLASS

57. The combination and conspiracy alleged in this Complaint has had the following effects, among others:

   a. price competition for Packaged Ice has been suppressed, restrained and eliminated;

   b. packaged ice customers and territories have been allocated by agreement rather than by competition

{00009670.5}
- 11 -
CLASS ACTION COMPLAINT

  c. the price of Packaged Ice has been raised, fixed, maintained and stabilized at artificial and non-competitive levels; and

  d. customers of Packaged Ice were deprived of free and open competition in the Packaged Ice market.

58. During the period covered, Defendants charged Plaintiff and the Class anticompetitive prices for Packaged Ice. By reason of the alleged violations of the antitrust laws, Plaintiff and the Class have sustained injury to their business or property, having paid higher prices for Packaged Ice than they would have paid in the absence of the illegal contract, combination or conspiracy, and, as a result, have been injured in their business and have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

59. The specific amounts of damages have not yet been determined because such determination will require discovery. When these amounts have been determined, Plaintiff will seek leave of Court to amend this Complaint to include such amounts.

## FRAUDULENT CONCEALMENT

60. The running of any statute of limitations has been suspended with respect to any claims which Plaintiff and the other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged in this Complaint.

## COUNT I

### VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT

61. Plaintiff incorporates by reference the allegations above and adopts them as though fully set forth here.

62. Defendants and un-named conspirators entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the Section 1 of the Sherman Act.

{00009670.5} - 12 -

CLASS ACTION COMPLAINT

63. As a result of the contract, combination or conspiracy among Defendants and their co-conspirators alleged herein, prices charged for Packaged Ice were fixed, maintained, and standardized in the United States. The alleged contract, combination, or conspiracy is a per se violation of federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of trade.

64. The contract, combination or conspiracy has had the following effects:

   a. Competition was for customers was restrained, suppressed or eliminated by allocating packaged ice customers and territories
   b. prices charged to Plaintiff and the Class for Packaged Ice were fixed or stabilized at non-competitive levels;
   c. Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Packaged Ice; and
   d. competition in establishing the prices paid and locations of doing business has been unlawfully restrained, suppressed and eliminated.

65. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have sustained damage by paying supra-competitive prices that they would not have had to incur but for the unlawful conduct of Defendants as alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

a. The Court determines that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2), Federal Rules of Civil Procedure, be given each and every member of the Class;

b. The unlawful combination and conspiracy alleged in this Complaint be adjudged and decreed to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

c. Plaintiff and the Class recover compensatory damages, as provided by law, determined to have been sustained by each of them, and that joint and several judgments in favor of Plaintiff

and the Class, respectively, be entered against Defendants, in an amount to be trebled in accordance with antitrust laws, and each of them;

d. Defendants be enjoined from continuing the unlawful contract, combination or conspiracy alleged herein;

e. Plaintiff and the Class recover reasonable attorney fees and costs of suit, including expert fees as provided by law; and

g. Plaintiff and the Class be granted such other, further and different relief as the nature of the case may require or as may seem just and proper to this Court.

Respectfully Submitted,

Dated: 1 July 2008

By: *[signature]*

Daniel J. Mogin (95624)
Chad M. McManamy (225205)
Noah D. Sacks (246694)
**THE MOGIN LAW FIRM, P.C.**
110 Juniper Street
San Diego, CA 92101-1502
Telephone: (619) 687-6611
Facsimile: (619) 687-6610

Alexander M. Schack (99126)
Lee T. Patajo (230667)
**LAW OFFICES OF
ALEXANDER M. SCHACK**
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608

*Attorneys for Plaintiffs*

{00009670.5}

- 14 -

CLASS ACTION COMPLAINT

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Respectfully Submitted,

Dated: 1 July 2008

By: _____

Daniel J. Mogin (95624)
Chad M. McManamy (225205)
Noah D. Sacks (246694)
**THE MOGIN LAW FIRM, P.C.**
110 Juniper Street
San Diego, CA 92101-1502
Telephone: (619) 687-6611
Facsimile: (619) 687-6610

Alexander M. Schack (99126)
Lee T. Patajo (230667)
**LAW OFFICES OF
ALEXANDER M. SCHACK**
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608

*Attorneys for Plaintiffs*

{00009670.5}

- 15 -

CLASS ACTION COMPLAINT